McKinney, L,
delivered the opinion of the Court.
This is an -appeal in error, in behalf of the State, from the action of the Circuit Court of Knox, at the June Term, 1856, granting to the defendants a charter of incorporation, by the corporate name of the Knoxville Savings Institution.” This proceeding purports to *646 be founded upon an act.of the General Assembly, ch. 254, passed on the 26th of February, 1856, entitled “an act to authorize the formation of companies, and regulate private and local affairs, and retrench the expenses of legislation.”
This is an extraordinary act. The first section professes to vest the power in regard to private and local affairs, in the several Cúcuit Courts of this State, under certain limitations and restrictions. The several sections provide that any number of persons, not less than three, may “ associate themselves . together for the purpose of pursuing or carrying on any branch or branches of manufactory, mining, mechanical, chemical, or other business; for promoting education, science, or art; for erecting ferries or mill dams; for establishing insurance, fire, savings, navigation, commercial, or agricultural business; building or loan associations; or any other pursuit, business, or occupation, or calling, which may be lawfully carried on, or engaged in, in this State, for private, social, public, or municipal purposes ,” And, in addition, the 16th section declares, “That, the provisions of this act, and the act of 1850, ch. 181, shall extend to all societies, charters, or associations, which may be formed for the promotion of benevolence, religion, or morality; or for the protection cf the property or per-sons of the members thereof, or for their social improvement, so far as the same are applicable.”
The process of incorporation is this: The persons desiring to be incorporated are simply required to present a petition to the Circuit Court of the county “ where the company or principal office of the company is located or to be kept,” setting forth the name *647 assumed to designate such company; the place or places where the business of such company is to be conducted, and the kind or branches of business, pursuit, or occupation to be carried on, the total amount of the capital stock of such company, &c,; the names and residence of the stockholders; the powers, duties, liabilities, rights and privileges of the members of the company, &e., and if it shall appear to the Court, that the powers, duties, liabilities, rights or privileges assumed for said company, or the provisions contained in said petition, are not repugnant to the provisions of this act, or to the Constitution and Laws of this State, or of the United States, the Court is to order the petition to be entered of record, in a book to be kept for that . purpose, and to order further, “ that said company be formed in accordance with the provisions of this act.” And upon filing a copy of the record of the Circuit Court, in the office of the Secretary of State, the process is completed, and the persons named in the petition, “their associates, successors and assigns,” are thereby “ created a body politic and corporate.” And in addition to the ordinary powers, every company incorporated under this act, is made, “ capable of buying, selling and conveying, any lands, tenements and hereditaments, goods, wares and merchandise, whatsoever, necessary or useful for said company to carry on their pursuits, business or occupation.”
The act further provides, that any company which, may be formed under its provisions, “ may increase or diminish its capital stock, or. may extend its business to any other branch of business, or may change the terms *648 of its chartered, rights, •privileges and powers,” by petition to the Circuit Court in the mode before stated.
It is further declared, that the liability of the stockholders shall not exceed the amount of the stock subscribed by each.
The shares of stock are made transferrable on the books of the company, “in such manner as the by-laws may provide.
The proviso to the fifth section declares, “that no company formed under the provisions of this law, shall have or exercise any banking powers whatever.”
All existing laws, “ contravening the provisions of this law,” are expressly repealed.
All charters of incorporation under this' act, are perpetual — no limit is affixed to their duration. They are likewise irrepealable — no power of repeal is reserved, nor is any power of control or supervision whatever retained by the Legislature, or lodged in the Courts.
The foregoing are some of the more striking features of the act, and all, perhaps, that need be noticed for our present purpose.
The so-called charter under consideration, assumes for the company the benefit of perhaps all the rights, powers and privileges, authorized by the act, and goes beyond. It assumes, and has the power expressly conferred upon it, in the face of the prohibition of the “ exercise of any banking powers whatever” — the right to discount notes, buy and sell stocks, deal in exchange, gold and silver coin, and uncurrent bank notes, and to “ issue receipts for money deposited.”
It is further provided that infants and femes covert, *649 may make deposite in said institution, and that such deposites “ shall he for their own separate use, free from other control or contract whatever.”
A tax is likewise voluntarily imposed, the act being silent on the subject of taxation, payable to the State annually, of one-half of one per cent, on each share of capital stock, “ which shall he in lieu of all other taxes."
The case is brought into this Court, under the provision of the fourteenth section, which makes it the duty of the Attorney General, to represent the State, in all applications under this act.
Two general objections are urged against the validity of the present charter: First, that its provisions to some extent, are inconsistent with the act. And, secondly, that the act itself is repugnant to the Constitution.
The multiplication of corporations of various kinds, in several of the American States, has long been regarded as a serious evil by many of our most enlightened statesmen, and jurists. It has been attempted in some of the States, to check their increase by constitutional restrictions. Such was the purpose of the provision in our amended Constitution, limiting the creation of corporations to such as might be deemed “expedient for the public good.” The rage for corporations is not easily to be checked. The immense power which a large consolidated capital insures our business of every kind, and still more, perhaps, the impunity secured by incorporation, to the persons and property of the members, from liability for the debts of the corporation, beyond the amount vested in the *650 capital stock, naturally enough accounts for the extreme eagerness with which they are sought, and two often granted, at the sacrifice of the public good.
The attempts to facilitate their multiplication, by the act under consideration, is alarming to every reflecting mind. A local tribunal is constituted in each county of the State, with full power to create corporations of every sort, municipal, public or private, ecclesiastical or lay, civil or eleemosynary, and for every possible purpose, within the scope of the constitution and general laws. No other restriction upon the powers to be granted, is to be found in the act, except the prohibition in respect to “banking powers.” A remarkable feature of the act is, that the persons seeking to be incorporated, are at liberty to claim, and prescribe for themselves, as a matter of right, whatever rights, powers and privileges they may' choose to exercise. In this respect, the Court has no discretion. However unwise in themselves, or contrary to public policy, or mischievous in their tendency, the provisions of their charter may be regarded, yet, if they be not positively repugnant to the act, or to the constitution and general laws, the Court cannot refuse to grant the charter. The powers granted to different corporations, for the same general purposes, may be as diverse and conflicting as are the views and opinions of the different tribunals granting them, and there is no arbiter provided to decide between them. Each corporation is a petty sovereign, within its own sphere. Each corporation thus created, may increase or diminish its capital, may change its chartered rights, may extend its operations to any other kind of business, *651 may traffic in lands, or goods, may transfer its stock in such manner as it may choose to adopt, and all this it may do, of its own mere pleasure. And the corporate body, so constituted, is wholly irresponsible to the public, or to individuals with whom it may have dealings, no security or indemnity being required by the act. Its charter is perpetual and irrevocable. It is subject to no supervision or control. And all laws contravening the provisions of the act, under which it is incorporated, are repealed. It is scarcely necessary to remark, that a grant of corporate privileges to private corporations, involving private rights, is in the nature of an executed contract, and cannot be revoked.
The extraordinary provisions of this act, were its validity admitted, would demand, that it should be scrutinized and construed with great strictness; and that every assumption of power, not intended to be granted, should be carefully guarded against. But, in our view of the case, this does not become necessary for the present decision. It is sufficient to say, in general terms, that the charter before us is, in several respects, inconsistent with the act. It confers power to discount notes, deal in exchange, dec., in palpable violation of the provisions against the exercise of “banking powers.” It arrogates the power to place deposites, made by infants and femes covert, beyond the reach of parents, husbands and all other persons; and even beyond the control of the law. And it usurps the power of taxation; and, in addition, exempts the corporation from further taxation, for all future time. But, holding the entire charter to be a nullity, *652 upon another ground, we need not dwell upon objections to particular provisions.
And this brings us to the second, and more important objection — the invalidity of the act itself.
The act was designed,— as is manifest from the purposes avowed in the bill, as well as from the express terms of the first section,— as an unqualified transfer of the exercise of the power to grant corporate privileges, from the Legislature to the Courts; and probably was intended to- exhaust the power of the Legislature, in respect, at least, to all such corporations as are within the purview of the act. And the question is, can the Legislature divest itself of this power, by a devolution of the power on the judicial department, or other substitute?
The constitution of this State (art. 11, § 7) declares, that “ The Legislature shall have no power to suspend any general law, for the benefit of any particular individual; nor to pass any law for the benefit of individuals, inconsistent with the general laws of the land ; nor to pass any law granting to any individual or individuals, rights, privileges, immunities, or exemptions, other than such as may be, by the same law, extended to any member of the community, who may be able to bring himself within the provisions of such law; provided always, the Legislature shall have power to grant such charters of incorporation as they may deem expedient jor the public good.”
It is argued by the counsel for the defendants, that this proviso is not to be regarded as a substantive grant of power. That the power to grant corporate privileges, is properly an original, inherent, legislative *653 function; and that the sole design of the proviso was, to exclude the interpretation of the preceding prohibitory clauses, as a denial of the power to the Legislature to exercise this function, in as ample manner as it before existed. That the effect of this proviso is, to leave this power, and the mode of its exercise, to the discretion of the Legislature, as one of the powers incident to that department of the government, unrestricted by anything in the constitution. And from this position the conclusion is deduced, that it is competent to the Legislature to delegate the exercise of this power to the Courts, or any substitute it may be thought proper to select.
If the effect of the proviso, were that supposed in the argument, which we do not admit, the conclusion is by no means legitimate.
In England, corporations are created either by act of Parliament, or by letters patent from the Crown. And it seems that the King may grant to a subject a general power to establish corporations. The subject upon whom this power is conferred, however, is viewed as only the instrument of the Crown; and the act of incorporation is regarded as the act of the King, upon the principle “qui facit per aiium, facit per se.” But this doctrine is wholly inapplicable in this country. Here, corporations are created only by statute. In this State they cannot exist otherwise.
In the theory of our government, all sovereignty is inherent in the people, the constitution of this State so expressly declares. It fm-ther declares, (art. 2, § 1,) that “The powers of the government shall be divided into three distinct departments, the legislative, execu *654 tive and judicial.” And section two, that no one of these departments “shall exercise any of the powers properly belonging to either of the others, except in the cases herein directed or permitted.” Thus, each department is limited within its own appropriate sphere. To each has been delegated by the people — whose agents they are — such portion of sovereignty as was deemed expedient. On the one hand, neither can assume the exercise of any of the powers conferred upon either of the others; nor, on the other, can either diVest itself — by transfer to another department, or other sub-agent — of any portion of the power expressly confided to its own exercise, except in virtue of an explicit authority to that effect, given by the constitution itself.
It is obvious, then, that the construction of the proviso to the seventh section, contended for by the defendant’s counsel, does not aid the argument in favor of the authority of the Legislature to delegate to the Courts the power of establishing corporations. For whether this power be viewed simply as the exercise of an ordinary function of legislation, upon which the constitution has imposed no restriction; or as the exercise of a power derived by express grant from the constitution; still, in either aspect, it is a power properly belonging to the legislative department, and being such, its exercise by either of the other departments, is prohibited by the constitutional provision above cited. There can be no such thing, under the constitution, as the devolution of power by one department upon another, unless by special authority of the constitution itself, and none such exists in reference to *655 the power in question. The delegation of sovereign power is, in itself, an act of sovereignty, and can only be made by the constituent body in whom the original power resides, or by its express . authority.
It is true, the legislative power is, in some respects,, “the sovereign power of the State.” Its constitutional powers are much more extensive, and less capable of being circumscribed Within precise limits, than those of either of the other departments; yet the constitution has prescribed certain bounds which it cannot transcend, and beyond these limits its acts are void.
If the Legislature might do what has been attempted by this act under consideration, that system of checks and balances introduced into our forms of government, both state and federal, and founded on the distribution of powers between the several departments, on which the safety of our free institutions has ever been found mainly to depend, might soon be destroyed. But we construe the proviso to be an abridgement of the power of incorporation. The power is conceded, but the purpose for which it may be exercised is also declared, namely, “for the public good.” The Legislature may not grant charters of incorporation, ad libitum, for any and every purpose; but only “ such • charters ” as may be “ expedient for the public good,” The power is not general. It is qualified and restricted by the specification of the purpose for which it may be exercised.
We therefore hold, that the act under consideration is inconsistent with the constitution and void. First, because it attempts to vest the judicial department with the exercise of a power which belongs exclusively *656 to the Legislature; and, in addition, it assumes to transfer, what the Legislature did not possess, unlimited power to grant charters of incorporation, for all conceivable purposes, at the will and pleasure of the applicants, wholly irrespective of the “public good,” and even contrary thereto.
And, secondly, because the Legislature itself is but an agent of the people. Its entire authority is merely a delegation of power from the constituent body — the people; its members are the chosen and confidential depositories of the law-making power of the government ; to whom, in the most emphatic sense, are confided •personally the most important and sacred govermental trusts — trusts which, in their very nature and intention, must be exercised in person, the idea of a transfer or delegation thereof, being in direct opposition to the design and ends of their creation.
But it'is argued that the validity of this act may be maintained under section eight of the article of the constitution before referred to. That section is as follows, “ The Legislature shall have the right to vest such powers in the Courts of Justice, with regard to private and local affairs, as may be deemed expedient.”
This clause follows in immediate proximity, that upon which we have just commented, which confides the power in question to the Legislature. And it is obvious, that the framers of the constitution did not intend, by this clause, that the Courts should be invested with the power of conferring corporate capacities and privileges, in the proper and general sense of these terms. This power, by the preceding clause, had been distinctly, and in explicit terms, vested in *657 The Legislature; and it would be in violation of every just principle of interpretation to assume, that if it were intended that the Courts might be vested concurrently, for some purposes, with the exercise of a power properly belonging from its nature, to the Legislature; and previously granted to that department— that such intention would not have been declared in -express terms.
And there is such an apparent incongruity and unfitness in the scheme of erecting some seventy odd local tribunals, each clothed with the power to grant charters of incorporation, to all persons, and for all purposes, as to forbid any amplitude of construction, for the purpose of sustaining the act in question. But there is little room for construction in reference to this clause. We must suppose that the framers of the constitution intended what their language naturally •imports. In the one clause, they speak of the power to grant “ charters of incorporation,” and dispose of that power by intrusting it to the Legislature. In the other clause,, they merely speak of “powers” in regard to “¡j&ivate and local affairs.” This term “ powers,” it must- be admitted, is not very definite, yet the distinction between the object and purposes contemplated by the two clauses, is perhaps as obvious and as marked as is the difference between mere matters of the nature of county police, which do not need the machinery of -a corporation for their attainment; and those matters of more important and general concern, affecting the “public good,” which demand the facilities and exclusive benefits of corporate *658 capacities and privileges, in order to their successful operation.
When the important difference is considered, between the power to create a corporate body, with all its exclusive privileges and exemptions, to be held in perpetual succession; and the simple power to confer certain previously defined rights and privileges, upon individuals, as natural persons, to be held and enjoyed, or transferred, as other civil rights; we can readily enough understand what was designed by the clause of the constitution now under consideration.
It was, no> doubt, thought to be enough, for the convenience and well being of the community, that, by a general law, to be enacted by the Legislature, and made applicable to all persons who might bring themselves within its provisions, the Courts might be empowered, as the instruments of the Legislature, to grant to individuals, as citizens and members of the community, such rights and privileges, defined by law, in regard to matters of a purely private and local nature, as the Legislature should deem it expedient to-bestow.
An authority of this nature had been' imparted to the Courts, in various instances, by the Legislature, prior to the introduction of this clause into the amended constitution of 1834; and these, and such like rights and privileges, were contemplated by its provisions.
The case before us does not, however, require that we should attempt to define the precise extent of the “powers” within the purview of the clause. It is sufficient for the present case to determine, as we do, *659 that it does not authorize the Legislature to invest tbe Courts with power to grant “charters of incorporation.”
The order of the Circuit Court, incorporating the “Knoxville Savings Institution,” will therefore be reversed and annulled, the application be refused, and the petition dismissed.